Michaël Fischer, SBN 202543
mfischer@CrossCourtlaw.com
**CROSSCOURT LAW, PC**
22621 Jeronimo Rd.
Lake Forest, California 92630
Telephone: (949) 416-8056

Attorneys for: Emerge Employer Solutions Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMERGE EMPLOYER SOLUTIONS INC., a California corporation<br><br>    Plaintiff,<br><br>    vs.<br><br>INFINZA, INC., an Alabama Corporation; NATIONAL PAYMENT CORPORATION, a Florida Corporation; and DOES 1-25, inclusive,<br><br>    Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>1. **FRAUD (INTENTIONAL MISREPRESENTATION)**<br>2. **FRAUD (NEGLIGENT MISREPRESENTATION)**<br>3. **FRAUD (CONCEALMENT)**<br>4. **INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**<br>5. **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS**<br>6. **NEGLIGENT INTEREFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS**<br>7. **NEGLIGENCE**<br>8. **CIVIL EXTORTION** |

   Plaintiff  Emerge  Employer  Solutions  Inc.  ("Plaintiff")  asserts  and  alleges  as
follows:

-1-
**COMPLAINT**

**JURISDICTION AND VENUE**

1.   The U.S. Constitution, Art. III, § 2, confers diversity jurisdiction to Federal Courts in matters of controversies between citizens of different States.

2.   Under 28 U.S.C. § 1332, the District Courts have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs and is a dispute by and between citizens of the different States of the United States.

3.   Plaintiff was at all relevant times a California corporation with a principal place of business in Orange County, California.

4.   Defendant Infinza, Inc. ("Infinza") was at all times an Alabama corporation with a principal place of business in Etowah County, Alabama.

5.   Defendant National Payment Corporation ("NatPay") was at all times a Florida corporation with a principal place of business in Hillsborough County, Florida.

6.   The matters in controversy in this case are over $75,000, hence exceed the minimal jurisdictional limit of this District Court

7.   Infinza is a national company that solicits and engages in commerce throughout the United States. Infinza conducts regular business in California.

8.   Infinza is registered with the California Secretary of State to conduct business in California and has a registered agent for service in California. Infinza has availed itself of the jurisdiction and protections of the State of California.

9.   NatPay is a national company that solicits and engages in commerce throughout the United States. NatPay conducts regular business in California.

10.  NatPay has availed itself of the jurisdiction and protections of the State of California.

11.  Infinza reached into Orange County, California, soliciting and entering into contracts to provide payroll services for certain of Plaintiff's clients and Plaintiff itself.

12.  An Infinza sales agent located in California solicited Plaintiff's business in Orange County. The parties negotiated agreements while in California, and Plaintiff was poised to receive the benefits of those agreements in Orange County, California. Further, the check printing provided by Infinza was in California.

13.  Infinza's tortious actions, as alleged herein, either took place in, or caused damage in, Orange County, California.

14.  NatPay reached into Orange County, California, soliciting and entering into agreements to provide ACH electronic payment services for Plaintiff and its clients.

15.  Plaintiff was solicited by NatPay in Orange County, California, negotiated agreements with NatPay in Orange County, California, and was poised to receive the benefits of those agreements in Orange County, California.

16.  NatPay's tortious actions, as alleged herein, either took place in, or caused damage in, Orange County, California.

17.  Based on the foregoing, the proper venue for this action is the Federal District Court for the Central District of California and, specifically, its Southern Division.

18.  The true names and capacities of defendants sued herein as Does 1-25 are unknown to Plaintiff who therefore sue the defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

19.  Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, each defendant was the agent and joint partner of each other and, in doing the things herein alleged, were co-conspirators and jointly orchestrated the acts and omissions described herein.

20.  Plaintiff is informed and believes, and thereon alleges, that at all times

mentioned herein, each defendant acted with each other defendant, within the course and scope of their authority as representatives, agents, or employees of such defendant, and that the acts and conduct of each defendant were known to, authorized by, and ratified by, each of the remaining defendants.

## BACKGROUND FACTS

21. Plaintiff repeats and incorporates by reference the allegations of Paragraphs 1 through 20 above as if fully set forth herein.

22. Plaintiff is a professional employer organization, meaning that it serves as a co-employer with its clients (traditional businesses) and manages many of these clients' administrative responsibilities regarding their employees. Among these responsibilities, Plaintiff provides payroll services for its clients.

23. While the bulk of Plaintiff's clients purchase a range of services from Plaintiff, a few seek only payroll services.

24. Because Plaintiff did not, at all relevant times, have an internal payroll department, Plaintiff entered into an agreement with Infinza, a national payroll service provider, to provide payroll services to Plaintiff and those of its clients who receive a suite of services from Plaintiff. This agreement was entered into in or about July of 2020.

25. At the same time, Plaintiff entered into a separate agreement with Infinza for Infinza to provide payroll services directly to those of Plaintiff's clients that only receive payroll services from Plaintiff. In these instances, Infinza was to vet these clients and contract directly with them while Plaintiff acted solely as a compensated sales agent.

26. Properly and timely processing payroll is critical to the livelihood of a business. Failure to do so exposes the business (both Plaintiff and its clients) to extreme damages. Plaintiff therefore relied upon Infinza to handle this task professionally and with the utmost of care.

27.  In or about June of 2021, Plaintiff signed up a company calling itself White Knight Pest Control ("White Knight") as a new client seeking only payroll services. Plaintiff, in due course, placed White Knight with Infinza. Infinza, in turn, was to vet White Knight according to their policies and procedures. Infinza approved them as a client and entered into a contract with White Knight.

28.  On or about July 15, 2021, Plaintiff was scheduled to run a payroll for White Knight. As common with some other clients, White Knight had requested that the payroll be paid into prepaid monetary cards.

29.  Prior to payroll being run, however, Plaintiff discovered that White Knight was a potential fraud risk. Plaintiff immediately carried out an investigation online and determined that the entity calling itself White Knight might actually only be impersonating it, which is something that occurs in the payroll industry. As a result of Plaintiff's investigation. It immediately contacted Infinza, alerting them of the situation, and instructing that they do not process White Knight's payroll.

30.  Payroll scams such as the one effectuated by the entity calling itself White Knight are not uncommon in the industry and Infinza, as a result, was well aware of the risks posed by them. In fact, upon information and belief, Infinza carries insurance for this kind of occurrence and has policies and procedures to handle such an eventuality. And, in this case, since Infinza had directly contracted with White Knight, Infinza had a duty to ensure that the company calling itself White Knight was legitimate.

31.  Yet, despite Plaintiff's clear advanced warnings and instructions, Infinza nonetheless chose to process payroll payments to White Knight.

32.  On the following day, July 16th 2021, Infinza made demands to Plaintiff for financial remuneration in the amount that it had paid to White Knight in the previous day's payroll. Infinza demanded that Plaintiff pay this amount in a matter of hours or it would refuse to run any payrolls for Plaintiff and its clients.

33.  Plaintiff, facing financial ruin and extensive liability if its clients' payrolls were not run, acquiesced and paid Infinza under explicit written protest.

34.  On July, 21, 2021 Infinza again demanded money from Plaintiff and again gave Plaintiff fewer than two hours to comply or Infinza would not process payrolls. Although Infinza did not have a right to this money, Plaintiff timely made the payment, again under protest.

35.  Throughout this period, and to avoid another such calamity from Infinza, Plaintiff had immediately attempted to secure another payroll company to replace Infinza, but none of these could onboard Plaintiff's clients and begin processing payroll for at least 30 days, a time beyond the next payroll cycle.

36.  Plaintiff, for lack of other options, decided that it would bring the payroll processing in-house. As such, it had to arrange for ACH services, which had to be run by a third party with the necessary licenses and clearances for electronic banking. Plaintiff therefore entered into an agreement with NatPay on or about July 21, 2021. Without ACH service, Plaintiff would not be able to provide payroll services.

37.  On August, 3, 2021, Plaintiff was set to run its own payroll for the first time for its clients.

38.  To Plaintiff's dismay, however, Infinza contacted NatPay and they together decided that NatPay should not provide the ACH services to Plaintiff and its clients.

39.  Later on the same day, specifically at 1:40 PST, NatPay informed Plaintiff that it would not be providing the ACH services for the payroll which had to be run that same day at 2:00 PST, twenty minutes later.

40.  In the background of this set of events, a large professional employer organization by the name of Vensure had offered to buy Plaintiff for $1.2 million. However, while this sum represented six times Plaintiff's estimated EBITDA (earnings before interest, taxes, depreciation and amortization), Plaintiff was not

interested in selling. The business was young and growing and believed it could sell at a much higher multiplier as it grew over time.

41.   On August, 3, 2021, with twenty minutes to run payroll or face legal and financial catastrophe, Plaintiff agreed to the purchase from Vensure, for only $600,000 (half of what Vensure had previously offered), in exchange for Vensure running the timely payroll. Further, one of the provisions of the sale agreement was a non-compete clause preventing Plaintiff's principals from forming a new professional employer organization or otherwise participating in that industry for at least two years.

42.   At the time of the Vensure sale, Plaintiff was profitable on a monthly basis and was adding new clients every month. Over the next four years, Plaintiff expected to produce, on average, $2,000,000 in annual revenue.

43.   But for Infinza's and NatPay's actions, Plaintiff would not have sold to Vensure and certainly not for half of the previous offer price. Plaintiff had instead planned to sell in about four years for $20 million, representing a reasonable rate of growth, less than it had already demonstrated, and a ten times multiplier, which is reasonable at the size it would likely achieve.

44.   As a direct, foreseeable, substantial, actual and proximate result of Infinza's and NatPay's wrongful actions as described herein, Plaintiff has suffered tremendous pecuniary losses, the monetary total of which shall be proven at trial, through loss of its clients, loss of contracts, being extorted into paying unearned sums to Infinza and NatPay, and eventually being forced to abandon its profitable business altogether.

## FIRST CAUSE OF ACTION

(Fraud—Intentional Misrepresentation against Infinza and Does 1-25)

45.   Plaintiff repeats and incorporates by reference the allegations of Paragraphs 1 through 44 above as if fully set forth herein.

46.   Prior to Plaintiff entering into the agreement with Infinza for Infinza to provide payroll services to Plaintiff and clients, Infinza made a number of intentional misrepresentations to Plaintiff so that Infinza could reap the financial rewards from such an agreement. These included the following:

A. Infinza would timely run payroll for Plaintiff and those of its clients who receive a suite of services from Plaintiff;

B. Infinza would timely run payroll for those of Plaintiff's clients that only receive payroll services from Plaintiff;

C. Infinza would vet the clients referred to it by Plaintiff in order to avoid fraudulent operations.

47.   These representations were made by Infinza through its sales agent, Angela Acres, by telephone conversations while she was in Corona, California, and Plaintiff's representative, Garrett Barbera, was in Orange County, California. The representations were made in or about July of 2020 when the agreements between Plaintiff and Infinza were being negotiated.

48.   These representations were false in that Infinza had no intention of timely running payroll for either Plaintiff or its clients, or for the clients placed with it by Plaintiff and, furthermore, would not vet the clients placed with Infinza by Plaintiff.

49.   As experienced payroll providers in the industry and having the tools and abilities to determine payroll procedures for a wide variety of clients, Infinza knew these representations to be false when it made them, or Infinza made these representations recklessly and without regard for their truth.

50.   Infinza made these representations in order to entice and induce Plaintiff to rely upon them and to enter into the agreements with Infinza and begin collecting the moneys from rendering payroll services.

51.   These representations were material in that Plaintiff relied upon them in deciding to enter into the agreements with Infinza for payroll services and, had

Infinza not made them, Plaintiff would not have entered into the agreements and simply shopped around for another payroll provider.

52. Plaintiff did not know Infinza's representations were false. Because they were made by an experienced provider of payroll services in the industry, Plaintiff believed that Infinza would not misrepresent these facts. As such, Plaintiff justifiably relied upon Infinza's representations in entering into the agreements.

53. As a direct, foreseeable, substantial, actual and proximate result of Infinza's fraudulent representations, Plaintiff has suffered tremendous pecuniary losses, the monetary total of which shall be proven at trial, through loss of its clients, loss of contracts, paying unearned sums to Infinza and NatPay, and eventually being forced to abandon its profitable business altogether.

54. Infinza's conduct, as set forth herein, was gross and wanton outrage, intentional, willful, oppressive, unlawful, fraudulent, and malicious.

## SECOND CAUSE OF ACTION

### (Fraud—Negligent Misrepresentation against Infinza and Does 1-25)

55. Plaintiff repeats and incorporates by reference the allegations of Paragraphs 1 through 54 above as if fully set forth herein.

56. Prior to Plaintiff entering into the agreement with Infinza for Infinza to provide payroll services to Plaintiff and clients, Infinza made a number of misrepresentations to Plaintiff so that Infinza could reap the financial rewards from such an agreement. These included the following:

   A. Infinza would timely run payroll for Plaintiff and those of its clients who receive a suite of services from Plaintiff;

   B. Infinza would timely run payroll for those of Plaintiff's clients that only receive payroll services from Plaintiff;

   C. Infinza would vet the clients referred to it by Plaintiff in order to avoid fraudulent operations.

57. These representations were made by Infinza through its sales agent, Angela Acres, by telephone conversations while she was in Corona, California, and Plaintiff's representative, Garrett Barbera, was in Orange County, California. The representations were made in or about July of 2020 when the agreements between Plaintiff and Infinza were being negotiated.

58. These representations were false as Infinza was not planning on timely running payroll for either Plaintiff or its clients, or for the clients placed with it by Plaintiff and, furthermore, would not vet the clients placed with Infinza by Plaintiff.

59. As experienced payroll providers in the industry and having the tools and abilities to determine payroll procedures for a wide variety of clients, Infinza should have known these representations to be false when it made them. Infinza had no reasonable grounds for believing the representations were true.

60. Infinza made these representations in order to entice and induce Plaintiff to rely upon them and to enter into the agreements with Infinza and begin collecting the moneys from rendering payroll services.

61. These representations were material in that Plaintiff relied upon them in deciding to enter into the agreements with Infinza for payroll services and, had Infinza not made them, Plaintiff would not have entered into the agreements and simply shopped around for another payroll provider.

62. Plaintiff did not know Infinza's representations were false. Because they were made by an experienced provider of payroll services in the industry, Plaintiff believed that Infinza would not misrepresent these facts. As such, Plaintiff justifiably relied upon Infinza's representations in entering into the agreements.

63. As a direct, foreseeable, substantial, actual and proximate result of Infinza's fraudulent representations, Plaintiff has suffered tremendous pecuniary losses, the monetary total of which shall be proven at trial, through loss of its clients, loss of contracts, paying unearned sums to Infinza and NatPay, and eventually

being forced to abandon its profitable business altogether.

64. Infinza's conduct, as set forth herein, was gross and wanton outrage, intentional, willful, oppressive, unlawful, fraudulent, and malicious.

### THIRD CAUSE OF ACTION

(Fraud—Concealment against Infinza and Does 1-25)

65. Plaintiff repeats and incorporates by reference the allegations of Paragraphs 1 through 64 above as if fully set forth herein.

66. Infinza intentionally failed to disclose certain material facts to Plaintiff before Plaintiff entered into the agreement with Infinza for Infinza to provide payroll services. Specifically, Infinza intentionally concealed from Plaintiff the facts that Infinza was not planning on timely running payroll for either Plaintiff or its clients, or for the clients placed with it by Plaintiff and, furthermore, would not vet the clients placed with Infinza by Plaintiff

67. Plaintiff did not know of these undisclosed facts concealed by Infinza.

68. Infinza intended to deceive Plaintiff by concealing these undisclosed facts.

69. Had Infinza disclosed the concealed facts, Plaintiff would not have entered into the agreements with Infinza and therefore would not have incurred the damages complained of herein.

70. As a direct, foreseeable, substantial, actual and proximate result of Infinza's fraudulent concealment, Plaintiff has suffered tremendous pecuniary losses, the monetary total of which shall be proven at trial, through loss of its clients, loss of contracts, paying unearned sums to Infinza and NatPay, and eventually being forced to abandon its profitable business altogether.

71. Infinza's conduct, as set forth herein, was gross and wanton outrage, intentional, willful, oppressive, unlawful, fraudulent, and malicious.

### FOURTH CAUSE OF ACTION

(Interference With Contractual Relations against Infinza, NatPay and Does 1-25)

72. Plaintiff repeats and incorporates by reference the allegations of Paragraphs 1 through 71 above as if fully set forth herein.

73. Plaintiff had existing and valid contracts with clients from a time prior to the wrongful actions of Infinza and NatPay set forth herein. These contracts were with clients including, but not limited to Beyond Basics, Inc., Certified AC Services, Inc., and Robert Morris DBA RK Morris Tile and Marble.

74. Infinza and NatPay knew of these contracts through business communications they each had with Plaintiff regarding the provision of payroll services by Infinza and ACH services by NatPay.

75. Infinza and NatPay, through the conduct described in this Complaint, intentionally and deliberately acted to induce a breach or disruption of the contractual relationship between Plaintiff and its clients, including but not limited to Beyond Basics, Inc., Certified AC Services, Inc., and Robert Morris DBA RK Morris Tile and Marble. Among other things, Infinza refused to run payroll for Plaintiff's clients and NatPay refused to provide ACH services to Plaintiff's clients. Further, Infinza also directly induced NatPay not to perform the contract it had in place with Plaintiff.

76. As a result of these actions, there were actual breaches and/or disruptions of the contractual relationship between Plaintiff and many of its clients.

77. As a direct, foreseeable, substantial, actual and proximate result of these wrongful actions, Plaintiff has suffered tremendous pecuniary losses, the monetary total of which shall be proven at trial, through loss of its clients, loss of contracts, paying unearned sums to Infinza and NatPay, and eventually being forced to abandon its profitable business altogether.

78. Infinza's and NatPay's conduct, as set forth herein, was gross and wanton outrage, intentional, willful, oppressive, unlawful, fraudulent, and malicious.

## FIFTH CAUSE OF ACTION

(Intentional Interference with Prospective Economic Relations against Infinza, NatPay and Does 1-25)

79. Plaintiff repeats and incorporates by reference the allegations of Paragraphs 1 through 78 above as if fully set forth herein.

80. Plaintiff had an economic relationship with many third-party businesses in need of payroll services and the other suite of services that Plaintiff provided as a professional employer organization.

81. These economic relationships had the probability of future economic benefit to Plaintiff.

82. Infinza and NatPay knew of these economic relationships through business communications they each had with Plaintiff regarding the provision of payroll services by Infinza and ACH services by NatPay.

83. Infinza and NatPay, through the conduct described in this Complaint, intentionally and deliberately acted to disrupt these economic relationships. Among other things, Infinza refused to run payroll for Plaintiff's clients and NatPay refused to provide ACH services to Plaintiff's clients.

84. As a result of these actions, there was actual disruption of the economic relationships between Plaintiff and the third-party businesses.

85. As a direct, foreseeable, substantial, actual and proximate result of these wrongful actions, Plaintiff has suffered tremendous pecuniary losses, the monetary total of which shall be proven at trial, through loss of its clients, loss of contracts, paying unearned sums to Infinza and NatPay, and eventually being forced to abandon its profitable business altogether.

86. Infinza's and NatPay's conduct, as set forth herein, was gross and wanton outrage, intentional, willful, oppressive, unlawful, fraudulent, and malicious.

## SIXTH CAUSE OF ACTION

(Negligent Interference with Prospective Economic Relations against Infinza,

NatPay and Does 1-25)

87. Plaintiff repeats and incorporates by reference the allegations of Paragraphs 1 through 86 above as if fully set forth herein.

88. Plaintiff had an economic relationship with many third-party businesses in need of payroll services and the other suite of services that Plaintiff provided as a professional employer organization.

89. These economic relationships had the probability of future economic benefit to Plaintiff.

90. Infinza and NatPay knew or should have known of these economic relationships through business communications they each had with Plaintiff regarding the provision of payroll services by Infinza and ACH services by NatPay.

91. Infinza and NatPay knew or should have known that these relationships would be disrupted if they failed to act with reasonable care.

92. Infinza and NatPay, through the conduct described in this Complaint, failed to act with reasonable care.

93. This conduct, as described in this Complaint, was wrongful as, among other things, Infinza refused to run payroll for Plaintiff's clients and NatPay refused to provide ACH services to Plaintiff's clients.

94. As a result of these actions, there was actual disruption of the economic relationships between Plaintiff and the third-party businesses.

95. As a direct, foreseeable, substantial, actual and proximate result of these wrongful actions, Plaintiff has suffered tremendous pecuniary losses, the monetary total of which shall be proven at trial, through loss of its clients, loss of contracts, paying unearned sums to Infinza and NatPay, and eventually being forced to abandon its profitable business altogether.

## SEVENTH CAUSE OF ACTION

### (Negligence against Infinza and Does 1-25)

96.  Plaintiff repeats and incorporates by reference the allegations of Paragraphs 1 through 95 above as if fully set forth herein.

97.  Infinza, as a provider of payroll services to Plaintiff, had a duty of care towards Plaintiff to act reasonably in the processing of payroll for Plaintiff and its clients and also to properly vet the clients it approved before running payroll for them.

98.  Similarly, NatPay had a duty of care towards Plaintiff to act reasonably in providing ACH services to Plaintiff and Plaintiff's clients.

99.  Infinza breached its duty of care through the acts and omissions alleged herein including through failing to properly vet White Knight before approving it for services, running payroll for White Knight after Infinza had been alerted of the fraud risk associated with it, and refusing to process further payroll to Plaintiff and its clients.

100.  NatPay breached its duty of care through the acts and omissions alleged herein including failing to provide the ACH services as it had been engaged to do.

101.  As a direct, foreseeable, substantial, actual and proximate result of these breaches of Infinza's and NatPay's duties of care, Plaintiff has suffered tremendous pecuniary losses, the monetary total of which shall be proven at trial, through loss of its clients, loss of contracts, paying unearned sums to Infinza and NatPay, and eventually being forced to abandon its profitable business altogether.

## EIGHTH CAUSE OF ACTION

### (Civil Extortion against Infinza and Does 1-25)

102. Plaintiff repeats and incorporates by reference the allegations of Paragraphs 1 through 101 above as if fully set forth herein.

103.  Through the acts set forth herein, Infinza expressly made knowingly

wrongful threats to Plaintiffs which demanded moneys to which Infinza knew it was not entitled.

104. Specifically, on or about July 16th 2021, and again on July 21st 2021, Infinza wrongly demanded moneys from Plaintiff under explicit threat that Infinza would not run payroll for Plaintiff and its clients although the deadline to do so was a mere few hours away.

105. Infinza, at the time of the threats, knew it had no clear right to this money. Infinza made the threats with the intent of forcing Plaintiff to give it money. Infinza made the threats knowing of the financial and legal calamity that would befall Plaintiff should payroll not be run on time.

106. Because it had no other viable option, Plaintiff complied with Infinza's threats by paying the money, but did so under protest.

107. As a direct, foreseeable, substantial, actual and proximate result of Infinza's extortion of funds from Plaintiff, Plaintiff has suffered tremendous pecuniary losses, the monetary total of which shall be proven at trial, through loss of its clients, loss of contracts, paying unearned sums to Infinza and NatPay, and eventually being forced to abandon its profitable business altogether.

108. Infinza's conduct, as set forth herein, was gross and wanton outrage, intentional, willful, oppressive, unlawful, fraudulent, and malicious

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against each defendant as follows:

1.    For economic damages according to proof;

2.    For general and special damages according to proof;

3.    For consequential damages;

4.    For punitive damages;

5.    For pre- and post-judgment interest and/or statutory interest;

6.    For costs of suit; and

1   7.  For such other and further relief as the Court deems just and equitable.

2

3  Dated: November 24, 2021

4

5               Michael Fischer

6               **CROSSCOURT LAW, PC**
                Attorneys for Plaintiff Emerge Employer
                Solutions Inc.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT**